UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF WEST VIRGINIA
CHARLESTON GRAND JURY 2014
MAY 10, 2016 SESSION



FILED
MAY 10 2016
TERESA L. DEPPNER, CLERK
U.S. District Court
Southern District of West Virginia

UNITED STATES OF AMERICA

v.                      CRIMINAL NO. 5:16-cr-00086

JOHN BREWER              18 U.S.C. § 2
                         18 U.S.C. § 371
                         18 U.S.C. § 1341
                         18 U.S.C. § 1001

**I N D I C T M E N T**

The Grand Jury Charges:

**COUNT ONE**

(Conspiracy to violate the Clean Water Act)

Background

At all relevant times:

1.  The Clean Water Act, Title 33, United States Code, Sections 1251-1387, was enacted to restore and maintain the integrity of the waters of the United States.

2.  The United States Environmental Protection Agency (EPA) was an agency of the executive branch of the United States and was responsible for the enforcement of the Clean Water Act.

3.  The Clean Water Act prohibited the discharge of any pollutant into the waters of the United States, except in compliance

1

with a permit issued by the EPA or by an authorized state. These permits were issued under the National Pollution Discharge Elimination System (hereinafter the "permitting program"), which allowed for the discharge of certain levels of pollutants. Each permit specified the amounts and types of pollutants that could be discharged under that permit. These permits also contained monitoring and reporting requirements.

4. The Clean Water Act authorized the EPA to delegate the administration of a permitting program to a state. The EPA approved West Virginia's plan in 1982. Thereafter, the West Virginia Department of Environmental Protection (DEP) administered the permitting program in West Virginia.

5. Companies operated coal mines and coal preparation plants throughout southern West Virginia. These mines and plants generated water when coal was extracted from the ground and when the coal was washed in preparation for further use. This water contained pollutants. The water generated from the coal operations was treated and ultimately discharged into waters of the United States.

6. Accordingly, DEP required these operations to obtain permits under the permitting program. The permits required these operations to regularly collect and test samples of the water being discharged from their properties, and to report the results of that

testing to DEP. The DEP further required that the testing of such samples: i) be done by a laboratory that was certified by DEP, and ii) comply with Clean Water Act regulations.

7. The Clean Water Act's regulations included requirements regarding collection, preservation, preparation, testing, and analysis of water samples. In particular it required the following:

    a. <u>collection</u>: that the water samples collected "be representative of the monitored activity," that is, that the samples accurately reflect the water that was being discharged into the stream;

    b. <u>preservation</u>: that certain water samples collected for testing be preserved at or below six degrees Celsius (43 degrees Fahrenheit); and

    c. <u>digestion</u>: that certain water samples undergo "digestion" prior to analysis. That is, that the samples be heated until a certain portion of the water had evaporated, and then the sample replenished to the original volume with pure water.

8. To be certified by DEP, a laboratory had to submit an application listing which EPA-approved methods it would use to perform its testing and analyses. DEP annually audited certified laboratories to monitor their compliance with the representations made in their applications and with all applicable regulations. DEP required that each laboratory renew its certification every year.

9. Appalachian Laboratories, Inc. (Appalachian Labs) was a West Virginia corporation, based in Beckley, West Virginia, that

3

obtained certification from DEP each year by representing to DEP that it gathered, stored, tested, and analyzed water samples in accordance with the permitting program and applicable regulations.

10. In annual audits conducted by DEP, Appalachian Labs employees represented to the DEP auditor that Appalachian Labs gathered, stored, prepared, tested, and analyzed the waters samples in accordance with permitting program and applicable regulations.

11. Owners and operators of coal mines, former coal mines, and coal processing plants in southern West Virginia hired Appalachian Labs to gather and analyze water samples from their sites for purposes of compliance with the permitting program and the Clean Water Act.

12. Appalachian Labs represented to those owners and operators that Appalachian Labs gathered, stored, prepared, tested, and analyzed water samples in accordance with the Clean Water Act and all applicable regulations.

13. Defendant JOHN BREWER was an agent and employee of Appalachian Labs, working as the lab and field manager. He supervised the employees that collected, stored, preserved, and analyzed the water samples from the coal mining operations. Defendant JOHN BREWER also participated in collecting, preserving, and analyzing water samples.

14. John Shelton, named herein as an unindicted coconspirator and not as a defendant in this indictment, was a field technician at Appalachian Labs. In approximately 2012 defendant JOHN BREWER gave John Shelton additional responsibility as a field supervisor delegating to him the authority to supervise the work of the field technicians. John Shelton was at all times supervised by defendant JOHN BREWER.

### The Conspiracy

15. From approximately 2008 up to and including at least September 2013, at or near Beckley, West Virginia, and within the Southern District of West Virginia and elsewhere, defendant JOHN BREWER and John Shelton and other employees of Appalachian Labs whose identities are known to the Grand Jury, did conspire to commit offenses against the United States, that is: to knowingly tamper with, cause to be tampered with, falsify and render inaccurate monitoring methods required to be maintained under the Clean Water Act, in violation of 33 U.S.C. § 1319(c)(4).

16. Specifically, the monitoring methods that defendant JOHN BREWER and his co-conspirators conspired to and did in fact tamper with, falsify and render inaccurate included:

    a. collection: that the water samples collected "be representative of the monitored activity," that is, that the

samples accurately reflect the water that was being discharged into the stream (40 C.F.R. §122.41(j));

    b. <u>preservation</u>: that certain water samples collected for testing be preserved at or below six degrees Celsius (43 degrees Fahrenheit)(40 C.F.R. §136); and

    c. <u>digestion</u>: that certain water samples undergo "digestion" prior to analysis. That is, that the samples be heated until a certain portion of the water had evaporated, and then the sample replenished to the original volume with pure water (40 C.F.R. § 136).

17. It was a purpose of this conspiracy to maintain and increase the business revenue and profit of Appalachian Labs by: (1) eliminating the work hours that would have been necessary to prepare certain water samples in the manner required by the regulations; (2) shortcutting and omitting certain required storage, preservation, and preparation procedures for water samples, and (3) avoiding the reporting of non-compliant water samples to DEP.

Manners and Means

18. Defendant JOHN BREWER, John Shelton, and other employees of Appalachian Labs carried out the conspiracy through the following and other manners and means:

    a. by diluting, adulterating, and substituting for certain water samples to diminish the concentrations of pollutants that valid testing of those samples would reveal;

    b. by systematically avoiding the sampling of certain discharges;

6

      c.    by failing and causing others to fail to preserve certain water samples at or below 6 degrees Celsius prior to being tested;

      d.    by instructing and causing lab technicians and other employees of Appalachian Labs to omit the required laboratory procedure of digestion for certain water samples;

      e.    by backdating certain water samples to make it appear as though those samples had been gathered within permissible time limits;

      f.    by causing and instructing Appalachian Labs' employees to indicate on laboratory forms that they had completed the digestion process when they had not done so;

      g.    by concealing their tampering, failure to preserve samples, and failure to digest, described in subparagraphs (a), (b), (c), (d), (e), and (f) above from DEP auditors.

<u>Overt Acts</u>

19.    To effect the objects of the conspiracy, defendant JOHN BREWER, John Shelton, and others known and unknown to the Grand Jury committed the following and other overt acts:

      a.    From approximately 2008 until at least September 2013, at or near Beckley, West Virginia, defendant JOHN BREWER regularly ordered lab technicians not to submit certain samples to the process of digestion;

      b.    From approximately 2008 until at least September 2013, at or near Beckley, West Virginia, defendant JOHN BREWER, John Shelton, and others known and unknown to the Grand Jury, knowingly failed to use ice to preserve the samples that they pulled at the required six degrees Celsius;

      c.    On or about February 8, 2012, at or near Beckley, Raleigh County, West Virginia, defendant JOHN BREWER sent WVDEP an application for certification of environmental testing laboratory that falsely asserted that Appalachian Labs was

using methods 200.7 and 200.8, which required digestion, when he knew in fact they were systematically omitting the digestion process;

  d. On or about May 1, 2012, at or near Beckley, West Virginia, defendant JOHN BREWER instructed John Shelton to place ice in his cooler that he kept in his truck in preparation for the DEP audit, to conceal from the inspector that on a daily basis Appalachian Labs did not properly preserve its samples;

  e. On or about May 2, 2012, at or near Beckley, West Virginia, defendant JOHN BREWER and others known and unknown to the Grand Jury falsely told an auditor with DEP that they were subjecting samples to the digestion process and that they were properly preserving their samples on ice when they knew they were not so doing;

  f. On or about February 5, 2013, at or near Beckley, Raleigh County, West Virginia, defendant JOHN BREWER sent WVDEP an application for certification of environmental testing laboratory that falsely asserted that Appalachian Labs was using methods 200.7 and 200.8, which required digestion, when he knew in fact they were systematically omitting the digestion process;

  g. On or about May 14, 2013, at or near Beckley, West Virginia, defendant JOHN BREWER and others known and unknown to the Grand Jury falsely told an auditor with DEP that they were subjecting samples to the digestion process and that they were properly preserving their samples on ice when they knew they were not doing so.

All in violation of Title 18, United States Code, Section 371.

**COUNTS TWO THROUGH FIVE**

(Mail Fraud)

1. The grand jury hereby realleges and incorporates paragraphs 1 through 14 of Count One as though fully set forth herein.

Scheme to Defraud

2. From no later than 2008 and up to and including September 2013, at or near Beckley, Raleigh County, West Virginia and within the Southern District of West Virginia, defendant JOHN BREWER and others known and unknown to the grand jury did devise and intend to devise a scheme and artifice to defraud Appalachian Labs' customers and to obtain money from these customers by means of materially false and fraudulent representations, pretenses, and promises.

Purpose of the Scheme

3. It was a purpose of this scheme to maintain and increase the business revenue of Appalachian Labs by: (1) eliminating the work hours, cost, and effort that would have been necessary to properly carry out the preservation, preparation, and testing of the water samples; and (2) billing its coal customers for results from water samples they had purportedly properly collected, stored, and analyzed, when defendant JOHN BREWER and others known and unknown to the grand jury, knew that those samples had regularly not been

9

collected, stored, and analyzed in compliance with the regulations or in compliance with the requirements of the contracts.

### Manner and Means

4. The defendant and fellow schemers accomplished, planned, and carried out the above-described scheme through the manner and means described in Count One, paragraph 18, subparagraphs a through g, which are hereby realleged and incorporated as though fully set forth herein.

5. It was further part of this scheme that Appalachian Labs submitted billings to its customers for water sampling, testing, and analysis purportedly done in compliance with the permitting program and WVDEP and Clean Water Act regulations, as required by its contracts with its customers, when, in truth and in fact, defendant JOHN BREWER had directed employees of Appalachian Labs to regularly shortcut and omit required preparation, preservation, and testing procedures.

### Use of the Mails

6. For the purpose of executing this scheme and attempting to do so, defendant JOHN BREWER, caused the following matters and things to be placed in a post office or authorized depository for mail matter at or near Beckley, West Virginia, within the Southern

District of West Virginia to be sent and delivered by the United States Postal Service:

| Count | Date | Description |
|---|---|---|
| Count Two | January 31, 2012 | An invoice to Elk Run Coal Company for analysis of samples not done in compliance with the required regulations |
| Count Three | February 8, 2012 | An application for recertification to WVDEP falsely listing that the lab was using EPA methods 200.7 and 200.8 |
| Count Four | January 31, 2013 | An invoice to Road Fork Development Coal Company for analysis of samples not done in compliance with the required regulations |
| Count Five | February 5, 2013 | An application for recertification to WVDEP falsely listing that the lab was using EPA methods 200.7 and 200.8 |

In violation of Title 18, United States Code, Sections 1341 and 2.

## COUNT SIX

(False Statements)

1. The grand jury hereby realleges and incorporates paragraphs 1 through 14 of Count One as though fully set forth herein.

2. On or about February 8, 2012, at or near Beckley, Raleigh County, West Virginia, within the Southern District of West Virginia, defendant JOHN BREWER knowingly and willfully made materially false, fictitious and fraudulent statements and representations in a matter within the jurisdiction of the executive branch of the Government of the United States in that defendant JOHN BREWER stated and represented in Appalachian Labs' application for recertification that (1) Appalachian Labs used EPA Method 200.7 in conducting its analyses of certain samples; and (2) that Appalachian Labs used EPA method 200.8 in conducting its analyses of certain samples.

3. These statements and representations were false, fictitious, and fraudulent, as defendant JOHN BREWER then and there well knew, because defendant JOHN BREWER had himself directed employees, that is, lab technicians, at Appalachian Labs to regularly omit the process of digestion that was required by EPA Methods 200.7 and 200.8 in preparing certain samples, and that therefore, defendant JOHN BREWER knew that Appalachian Labs was systematically failing to follow EPA Methods 200.7 and 200.8, as required by the Clean Water

12

Act, in testing certain samples, contrary to his representations in Appalachian Labs' application for recertification.

In violation of Title 18, United States Code, Section 1001.

## COUNT SEVEN

(False Statements)

1. Paragraphs 1 through 13 of Count One are hereby realleged and reincorporated as though fully set forth herein.

2. On or about February 5, 2013, at or near Beckley, Raleigh County, West Virginia, within the Southern District of West Virginia, defendant JOHN BREWER knowingly and willfully made materially false, fictitious and fraudulent statements and representations in a matter within the jurisdiction of the executive branch of the Government of the United States in that defendant JOHN BREWER stated and represented in Appalachian Labs' application for recertification that (1) Appalachian Labs used EPA Method 200.7 in conducting its analyses of certain samples; and (2) that Appalachian Labs used EPA method 200.8 in conducting its analyses of certain samples.

3. These statements and representations were false, fictitious, and fraudulent, as defendant JOHN BREWER then and there well knew, because defendant JOHN BREWER had himself directed employees, that is, lab technicians, at Appalachian Labs to regularly omit the process of digestion that was required by EPA Methods 200.7 and 200.8 in preparing certain samples, and that therefore, defendant JOHN BREWER knew that Appalachian Labs was systematically failing to follow EPA Methods 200.7 and 200.8, as required by the Clean Water

14

Act, in testing certain samples, contrary to his representations in Appalachian Labs' application for recertification.

In violation of Title 18, United States Code, Section 1001.

CAROL A. CASTO
Acting United States Attorney

By: _____
BLAIRE L. MALKIN
Assistant United States Attorney